Good morning and welcome to the United States Court of Appeals for the Ninth Circuit. Judge Bumate and I would like to express our appreciation to our colleague, Judge Miller Baker, from the Court of International Trade. He has sat with us for a few days this week and we really appreciate your willingness to give us a hand with our docket. Thank you. The cases on the docket sheet indicate that four are submitted on the briefs and they're listed. There is only one case for oral argument this morning and we will proceed to that right now. That's California Restaurant Association v. the City of Berkeley. Counsel for the appellant. You may proceed, Counsel. May it please the Court. Brian Barron for Appellant California Restaurant Association. I'll aim to reserve five minutes for rebuttal. I'd like to start with three main points. First, the plain language of APCA, read as a whole, preempts Berkeley's ordinance because it is a regulation concerning the energy use of covered appliances. Second, there is a limiting principle to concerning and it's established by preemption cases involving similar relating to provisions. And third, this case has nothing to do with gas distribution. It's about banning appliances covered by APCA in contravention of federal policy. Counsel, you say that this bans appliances. Is that actually true? Isn't it true that any business owner or homeowner who purchases new construction in Berkeley can, in fact, install gas appliances? No, Your Honor, unless they could put them in the building, but they can't connect them to the gas supply. It would be economically nonsensical, right? But that's a separate question. So it would be economically nonsensical. They can actually do it. There's nothing in the ordinance that prevents them from actually installing gas appliances. Is that correct? Isn't that correct? If installing means putting it in the building, but installing in a way that it can actually be used, no, that's not correct. All right. So let me give you this hypothetical. Let's say there are different ways of dealing with this question of supply. This is really a regulation of supply. What if the city of Berkeley had a carbon tax, and the carbon tax made it economically prohibitive to use gas appliances? The carbon tax was a thousand-fold increase in the price of gas. No business could economically turn on the gas appliance. Would that be preempted by this ordinance, I mean, by the Federal statute? Yes, Your Honor, because it's making it economically prohibitive, I think just a tax that made it perhaps less of a good idea and favored electric appliances or appliances using another source, that would not be preempted. But when you are effectively prohibiting the appliances, I think that's the point at which preemption kicks in. All right. An economically prohibitive tax. Right. Okay. And I think that's consistent with this Court's decision in Building Industry Association of Washington, where the building code there made it cheaper to use appliances that exceeded federal standards but didn't actually require it. And I think that would have been a different case if it had made it economically prohibitive to install it. So if the tax had been a billion dollars to use a gas appliance, I think that's different from making it just slightly more expensive than an electric appliance. I think those are two very different types of regulation. One is effectively banning the appliances that Congress has decided should be available. And Congress has prohibited both the Department of Energy and the states from making unavailable. So let me give you another hypothetical. And this hypothetical is, you know, you've heard of rolling brownouts. And typically these are enforced by just the termination of supply. The utilities are ordered to just turn off the switch, if you will. But there's another way of doing that. So what if the City of Berkeley, there was an emergency and the City of Berkeley decided to require, just penalize under penalty of law, use of your appliances for certain hours during the day, right? So this would make it — would ban the use of the appliances by — or the use of the gas during that certain periods, hours during the day. Would that be preempted by the statute? I think that would be preempted. And I think one of the provisions the court asked about suggests that it would be. Section 6297D5B, Romanette 1, Big Roman 1, defines an energy emergency condition that could allow a waiver earlier than one would otherwise be available in terms of an inability to provide adequate quantities of gas. So if you had some sort of severe shortage and the state is regulating appliances or a city is regulating appliances to correct for that, that suggests that, you know, Congress had in mind that it would otherwise be preempted. And that's why there is a provision in the waiver process allowing for that. But that doesn't go to — doesn't this suggest that if, in fact, gas is being made unavailable by the state or locality, that nevertheless you can't qualify for the waiver? In other words, the state may make gas unavailable, but if it's doing that, that simply means that they're not otherwise qualified for a waiver, which means that the state, in fact, can restrict or terminate the use of gas or electricity. So if we're talking about broader decisions about what types of energy to distribute, we agree that APCA doesn't speak to those. That's where the Natural Gas Act would actually come into play, and this whole regulatory overlay with distribution would come into play. And that's further afield, and that's a case about, you know, what is the limiting principle on concerning? And I think that looks to APCA's purpose, and that purpose is determined from the tax, and that's not what Congress was focused on in APCA. So I think those distribution decisions are very far afield from this case, and I think the history of preemption litigation shows that trying to deal with the cases on the fringes in a case that is really well within the preemption provision is not going to forestall further litigation. With these concerning and relating to provisions, you're not going to be able to draw a bright line rule in a case like this, where it's as close as you can get to directly regulating the appliance without physically regulating the appliance. It's just not a good vehicle to try to draw those lines for cases that involve, you know, a much more complicated regulatory overlay and, you know, that really need to be decided by looking at the particular regulation, reading the preemption provision, and determining whether it's really within the scope of what Congress had in mind when it wrote regulation concerning the energy use. So what is your, and I interrupted you early on, what is your limiting principle? The limiting principle is basically, does it frustrate Congress's purpose as determined from the tax? And I think that's the principle that underlies the ERISA cases and other relating to cases. Concerning means the same thing as relating to. The Supreme Court said that on Lamar, Archer, and Coffrin. And those terms are understood to capture regulations that have a connection with or reference to the preempted subject matter. Right. That includes a significant impact on Congress's objectives. And I think really the best case to look at on that. So what is Congress's objective here, that people can use whatever appliance they want? Well, not exactly whatever appliance they want, but Congress wanted to preserve a broad array of choice. So if you look at 629504, for example, the department is prohibited from adopting a standard that's likely to result in the unavailability of a type or class of appliance. So that signals that Congress have this broad objective. And really this is about trying to avoid depending on imports for energy supply. And Congress tried to get at that in two ways. One is by fostering a domestic supply of a diverse array of energy sources so that you weren't dependent on any one particular source. And the other was by reducing demand through conservation measures, including with appliances. But Congress didn't want to start taking away things that were available, which is why it prohibited both as to the department in 629504 and as to states seeking waivers in 6297D4 making a type or class of appliance unavailable. Counsel, you brought up 6295, and I'm looking at the very first portion of that statute, Section A, purposes. The purpose of this section are to, one, provide federal energy conservation standards applicable to covered products. Isn't this essentially the congressional authorization for the Energy Star Program, the idea being that manufacturers and others can be given standards of efficiency that will be placed on the products and then be available to the public who is conscious of the need to conserve energy? Isn't this really what it's aimed at? Isn't it aimed at the ultimate products, the actual appliances themselves? Yes, Your Honor, that's what the federal regulation is aimed at, but that's not the only thing Congress was concerned with. So Congress chose a particular approach to this national energy policy, and it didn't want the states interfering with that approach, including by making a patchwork of conflicting regulations. Counsel, I agree with that, but it goes to a patchwork of standards as to efficiency. It seems to me that this case turns on the distinction between supply and demand. And can you point to anything in this entire statute that speaks to federal regulation of supply in a way that there's a corresponding preemption of state regulation of supply? I see this entire statutory scheme as being devoted to demand, that is, the demand of the appliances for energy as defined in the statute. Why doesn't the statute speak to supply? That is, an affirmative grant of authority to the federal government to regulate supply in a way that we would know that there's a corresponding withdrawal of authority to the states to regulate supply. We don't know that the federal government was really in this statute drawing a line between supply, which it does address in Subchapter 1 on domestic supply availability. I don't think that's where it's drawing the line between federal and state regulation. What it's saying is states can't adopt regulation concerning the energy use of appliances, and I think that has to include banning EPCA-covered appliances that Congress wanted to ensure were available. And if you can circumvent that prohibition on banning covered appliances by simply prohibiting an electric appliance from being plugged in or a gas appliance from being connected to the existing gas supply, then the preemption provision isn't really accomplishing anything at all. I think that would frustrate Congress's purpose. Isn't that true, then, as to you say that a municipal ban on distribution of natural gas within the municipality is not preempted, but the ordinance, in fact, is, that is, the building code is preempted? What's the principal distinction between, I mean, how do you draw the line on a principal basis between that municipal ban on the one hand and this ordinance on the other dealing with the housing codes? I think the difference is between EPCA, which is about how you're using the available energy and what it really means to be distributing gas. And I think if this case is about gas distribution, you're distributing gas to yourself any time you turn on a gas stove. Distribution is better understood to end at the meter, and, in fact, that's how Berkeley understood it. Berkeley's ordinance defines the prohibited natural gas pipes as those that extend from the point of delivery at the gas meter. That's how it phrased the ban here. So what that's doing is prohibiting the appliances from hooking up to the otherwise available gas supply, just like prohibiting someone from plugging in an electric appliance. So if Berkeley had wanted to regulate energy efficiency to a higher standard than the federal system allows, it could have figured out which appliances comply with its preferred standard and then just banned all the other ones from hooking up. So it would be banning EPCA appliances, but on Berkeley's theory, you're banning them from plugging into the available energy supply and you're not regulating the appliance themselves. That can't be right. So, counsel, it seems like you're conceding that this preemption statute is geared towards products, appliances, right? But I guess your theory is that the Berkeley's regulation basically bans an appliance as a class. Is that right, that it bans gas appliances as a class? And that's why the regulation, even though it doesn't directly apply to appliances or products, it does actually cover – it is covered by the preemption statute. That's exactly right, Your Honor. It's – what's preempted are regulations concerning, not regulations directly regulating, as the district court held. And I think that's where the district court made a mistake. Concerning has to cover something beyond the physical appliance itself if it's to mean anything at all. And it applies here where what you're doing is just preventing the appliance from plugging into the existing supply. And the purpose and fact of Berkeley's ordinance is to ban natural gas appliances. That's right. ER 34 to 35 and 45. Berkeley admits this. That's the whole point. Can I ask one technical question? What is actually banned? Is it gas pipes into new buildings on the exterior or something else? It's pipes from the point of delivery at the meter onward into the building. But I think really that comes down to the same thing as if Berkeley had allowed the pipes into the building and then just prohibited that last little piece connecting it up to the appliance. Right. Because I notice the government has said that this statute preempts hookups with certain energy efficiencies. So it sounds like it's the same thing. Yes. On the government's reading, Berkeley's ordinance is preempted. I'm not sure why the government has concluded otherwise here. If there are no further questions at this time, I'd like to reserve the remainder for rebuttal. You may do so, counsel. Thank you, Your Honor. We'll hear first from the city of Berkeley. May I suggest to both the city and to the federal agency that your side is entitled to 20 minutes total. We've set the clock so that you've been allocated 15 minutes and the federal agency, five, we intend to enforce those limits. So be aware. Thank you, Your Honor. May it please the court. Tony Francois for Appellee, city of Berkeley. Your Honors, the district court's judgment should be affirmed in this case because Section 6297C does not preempt the city's ordinance. I'd like to briefly address the standing question that we raised in our brief. The point we're making with that is that what the city has alleged is a future injury, not one that's ongoing but one that occurs at some time in the future. And Lujan and then the San Diego gun rights case from the Ninth Circuit require that that allegation of future injury be tethered in some way to the time that the complaint is filed. And since the allegation is entirely open-ended on that question, it fails to meet the requirement in Lujan that the injury be alleged with a high degree of immediacy, and that's in footnote 2 of Lujan. Very well. As to the preemption question, Your Honor, there's two general points I would like to address and obviously answer the court's questions. The first is that there really is no limit to the preemptive effect of 6297C if read the way that the Restaurant Association would like it read. There are a couple of examples that I think show this. 6297C, in addition to addressing natural gas, also deals with water use efficiency standards. There are many localities in the state of California that have water shortage emergencies and have banned new water hookups, essentially all new construction that would require water service. Under the Association's reading, those water supply bans would require a waiver from the Department of Energy. There are also, as Judge Baker mentioned, periodic electric outages, either for safety. You're saying some states prevent new constructions from having water appliances? From dishwashers, showers? No, Your Honor. Your Honor, several cities in California prohibit the provision of water because there is inadequate water available. The consequence of that is that the houses or the commercial buildings can't be built, but it's a regulation affecting the availability of water. Under the Association's reading, we think that that would require a waiver. Well, doesn't that actually concede your point, that if there's an exception to the preemption doctrine that says that if you're affecting the supply of energy, you have to get a waiver? So clearly this statute does cover the provision of supply of energy or water. No, we disagree, Your Honor. Then what's the point of that exemption?  The one that you just talked about, that you have to get a waiver from, I forget which agency, if you're going to affect the supply? I misspoke then, Your Honor. What I'm saying is that as the Association is reading the statute and wants the court to read it, those water moratoria would require a waiver. Correct. But we say they don't. In other words, nobody is saying that when a city says no new building until it's done. So that waiver is an exemption to the preemption statute, correct? It is. What we're saying, though, is that there's no waiver required for those kinds of moratoria. Otherwise, all the cities in California that have them in effect, those are preempted by this statute. What I'd like to suggest is a much more textually-based limiting principle, which is that if a regulation prevents you from using an appliance because the appliance doesn't exceed the federal uniform standard, then it's within the preempted domain. And I think Dan City's used cars is really the case to look at to analyze this case. And it says a couple of important things. So is your limiting principle then the regulation has to cover directly appliances? Is that correct? It has to prevent the use of an appliance because the appliance isn't more efficient than the federal standard. The preempted domain is the… How is that textually based? Because the definitions and explanation of the preempted domain… Let me grab the statute on page 8 of the appellant's statutory addendum. The preempted domain, and this is 6297C, is state regulations concerning the energy efficiency, energy use, or water use of such covered products with respect to such products. And the double reference to the covered products constrains the scope of this to regulations that would require a product to exceed federal standards. And the predicate for this preemption provision is the existence of that uniform… But where are you getting the exceed federal standards part? I can see that point, that it should have an impact on the product, but where are you reading exceed federal standards from? It's regulation concerning the energy use of such covered product. So energy use is defined as the quantity, and this is in 62… Back on page 2 of that addendum. I'm sorry, 6291.4. The term energy use means the quantity of energy directly consumed by a consumer product at the point of use as determined by a test method. So the purpose of the statute is to first authorize the Department of Energy to adopt those uniform federal efficiency standards and then to prevent states from requiring better without a waiver. And so presumably nobody would be worried about a local standard that didn't require better than the federal standard. And so our proposed limiting principle is a regulation that actually prevents the use of a federally compliant appliance because it's not better than the federal standard. Then what if the city just banned the appliance? Under your theory, that's not preempted. If it banned the appliance because it doesn't exceed federal standards? Well, yes. Say that, you know, Berkeley, instead of the hookups, said no gas appliances. It's not clear to me that that would be preempted, Your Honor. If the question… I mean, that's clearly what Congress wanted to prevent. I disagree with that, Your Honor. The statute establishes uniform federal standards for appliance efficiency. That is the specific way that it achieves the objective of broad consumer choice. So when you look at the legislative history and the cases discussing this, the history of this is the patchwork of local standards. That's what led to difficulty for manufacturers to supply the right thing for every market. The way that, the specific way that this statute achieves its objective is the uniform federal standard, not some broader market access obligation. Right. But then how is it consistent with that interest that a city can ban a whole class of products? Well, for one thing, Your Honor, the ordinance does not universally ban the whole class of products. It's got the public interest exemption in it. Oh, yes. Fair enough. But the whole effect is generally banning gas appliances.  It might be done for safety. There's the recitations of the purposes of the ordinance. And in the ordinance include greenhouse gas emissions, fire safety, indoor emissions. So to say that this provision of EPCA obligates cities to extend natural gas infrastructure everywhere, which we think that's the implication of it, would prevent, for example, when the natural gas infrastructure blew up in the city of San Bruno several years ago, if that city stepped back and said, you know, we need to rethink whether we're going to do this again. Under the association's theory, the city would have had an obligation under this appliance efficiency standard statute to allow the reinstallation of all that natural gas infrastructure, even if their judgment was because under their theory, anything that prevents the availability of natural gas is preempted by this appliance standard. I think their theory is anything that prevents the use of available natural gas is preempted. It's very different than having a right to natural gas. Well, I'm having a tougher time seeing the distinction, but I appreciate the point. I would say that I would agree with, I think, what counsel for the association says, that the statute does not address the availability. And at another point, you know, the statement was, let me grab it, that EPCA is about how you are using available energy. Correct. So if natural gas is available in Berkeley, they're just saying they should have, I mean, they can access it. Well, I think what they're saying, Your Honor, is that the city has an obligation to allow it to be extended to all new construction. In other words, an obligation to make it available. And that winds up with no limiting principle. What about a part of a city that does not yet have natural gas service to it? There's nothing in the statute that would draw this line of the meter. In fact, to the extent that they raise the argument that this ordinance actually operates downstream of the meter, yeah, downstream of the meter, there, if that's true, that that's not distribution anymore, then it is straight local land use police power authority that, you know, certainly under the rule against implied repeals, EPCA doesn't disturb the Natural Gas Act's allocation of local distribution of natural gas. Even less so, could you read these appliance efficiency standards to disturb the, to force the availability of natural gas where that's a question of local land use authority. That's an even bigger, you know, elephant to hide in the mouse hole, if you will, than in the street infrastructure. Counsel, let me ask you about the waiver of federal preemption provisions. It seems to me that your friend has a pretty good argument here that the statute is clearly, one of the evidences of purpose by Congress to protect manufacturers. And one of the things is that the secretary has to consider the extent to which the state regulation, that is the cumulative impact of such requirements would have. In other words, what if we had multiple states adopting this kind of regulation? And including among the other considerations is the effect that this would have on production and sales volume. So if we extrapolate this out and we had numerous jurisdictions and states banning natural gas in new construction, the net effect would be certainly not positive for manufacturers of gas appliances. Does this go to one of the purposes of Congress? And that certainly informs, as evidenced in the statute itself, and that informs the scope of preemption. So, Your Honor, and just so I'm clear, you're referring to 6297d-4? Yeah. Well, actually, d-3, right? So I'm going to, I'm referring to d-3. So 6297d-3. The secretary may not prescribe a rule under this subsection. If the secretary finds and publishes that such interested persons have established by preponderance of the evidence that the State regulation will significantly burden manufacturing, marketing, distribution, sale, other covered product on a national basis, and then there's all these factors that the secretary is supposed to consider. And it, in taking into consideration the extent to which the regulation results in a reduction in the availability of a class of products, it seems to me if we had dozens of jurisdictions around the country, multiple states adopting a model of this Berkeley ordinance, that this would certainly reduce the demand for natural gas. And that, I mean, excuse me, natural gas products manufactured by these manufacturers that the Congress is trying to protect. So as my time is expiring, my short answer to that, Your Honor, is that the waiver provision applies to state regulations that are, in fact, efficiency standards. And this is a fuel availability, it's an energy type regulation. If you look at 6297d-4, there's a discussion of availability of different types of appliances. And there's several characteristics, sizes, capacities, volumes, reliability. Fuel type is not in that list. And I think where you see Congress protecting the availability of consumer choice, fuel type winds up not being one of those categories. My time has expired. I would thank the Court and ask that the District Court's judgment be affirmed. Thank you, Counsel. Thank you, Your Honor. We'll hear from the United States. Thank you. Thank you, and may it please the Court, Thomas Pullen for the United States. I'd like to start by just pointing out that this Court has already addressed the purpose of EPCA preemption in its previous cases, the Air Conditioning Institute case and building industries, where it pointed out that what Congress intended to preempt were state energy efficiency standards. It said that in both cases. EPCA establishes standards and then expressly preempts state standards requiring greater efficiency. This Berkeley Ordinance doesn't implicate that concern. It doesn't even address energy use at all, as that term is defined in the statute. Counsel, can I add, let me, this is a question I wanted to ask to you from the government. We posed a question, we sent a series of questions, we asked to counsel to be prepared to address, and there's this mysterious provision in the statute that I just don't understand. And I was wondering if the Federal Government could help educate me. And this is that no provision of this chapter, that is, this entire statute, shall permit the imposition of any, shall require any allocation of natural gas not subject to the jurisdiction of the Secretary and FERC. What does this mean? So I think Your Honor is referring to, I just want to be clear, 6399. That's correct. So this is a, there was a prior statute before ECPA, I believe it was called the Petroleum Emergency Allocation Act, that gave the Federal Government some authority regarding price controls and allegation of certain petroleum products. ECPA modified that and continued it forward. And ECPA was a very large statute. This was in a separate section. So ECPA carried that forward and changed some of the authority that a predecessor of the Department of Energy had. Then this provision is just making clear that ECPA doesn't permit any price control or allocation of natural gas that's not already subject to the jurisdiction of what is now the Secretary of Energy or FERC. So basically this provision preserves the jurisdictional line between state authority and federal authority. And you can see this in, there's a district court case from 1976 that applies this statute. By the way, there's not much authority on this. These authorities lapsed by and large in 1981. They were kind of emergency authorities during the petroleum crisis. That district court said that the act clearly provides that the FEA, which was a predecessor to the Department of Energy, does not have pricing or allocation powers over the interstate use of natural gas. So this is very consistent with the policy line that's drawn in the Natural Gas Act and kind of permeates this area where local distribution is under the authority of state and interstate falls under the Secretary of FERC. Counsel, I'm just a little curious that the United States government is now participating in a case which supports the banning of the use of natural gas in a city of this country. Is this a policy that we should be aware of? No, we're here just addressing the scope of ECPA's preemption provision. Now, this policy that Berkeley's adopted may or may not be a good policy. The United States is not presenting any view on that. We are just addressing the scope of the preemption provision because, as we detail in our brief, we think that an overbroad reading of this could harm the federal administration of the statute. Counsel, in your brief you mentioned that it's the position of the United States that prohibition of hookups for appliances with less than a certain efficiency would be subject to preemption. That's right. Why is this statute or this regulation functionally the equivalent of that? It seems like you said a prohibition of hookups. This is just on the other side of the building, it seems like. Well, I think the important point there is it's not just prohibition of hookups. It's prohibition of hookups for appliances with less than a certain efficiency. Right. And here, the appliances here are any appliance that uses gas. It's the same thing. What's the difference? It's not at all related to efficiency. So this— Well, isn't Berkeley saying that use of gas is inefficient? No. What Berkeley is— From an environmental perspective, it is. That's how I understand the whole point. It's addressing the health effects of emissions, which are different from efficiency. There can be some—and the Supreme Court explained this in Massachusetts v. EPA, that these can be related, but they are different sources of— So if Berkeley said you can't use gas because we don't like the energy efficiency, that would be preempted. But if Berkeley banned the use of gas because of health reasons, that's not preempted. I don't think so. I think we need to look at exactly how the statute operates. Here, it doesn't turn on anything having to do with the efficiency of the appliance. Indeed, these new construction buildings could end up using less efficient electrical appliances. This addresses a totally different concern that has no relation to efficiency. It doesn't guarantee more efficient products. But if Berkeley said that they're banning the use of gas appliances because we find it inefficient, you would agree that that's preempted? I'm not sure that that would be a— I think we need to look at what the statute is doing, and I'm not sure that that would necessarily be— actually ensure more efficient products. What this ordinance does is address the fuel type that's available that has nothing to do with the amount of energy that an appliance consumes in its operation. And that's what energy use, as defined in the statute, is directed at. It's the amount of energy consumed at point of use as measured by test standards that look at the average cycle of use of the appliance when it's actually in use. So that is what the ordinance addresses. And no matter how capacious concerning could be, it doesn't address that. And for reasons in our brief, we think concerning is actually used more narrowly here, but I see my time is up. Thank you, counsel. Your time expired two minutes ago. I apologize. So in fairness, we'll let the other side have an additional two minutes. And if I could ask the clerk to please add two minutes to whatever the remaining time is. Thank you. Thank you, Your Honors. I'd like to pick up where we just left off on hookups based on energy efficiency. I'd like to go back to the text of the preemption provision, which is where this case should begin and end. What's preempted is not just regulations concerning energy efficiency, but also regulations concerning energy use. Berkeley's ordinance concerns the energy use of covered appliances because it prohibits the use of any natural gas. And natural gas is a type of energy as defined in EPCA. So on the government's theory, Berkeley's regulation is prohibiting hookups based on energy use, and that should be just as preempted as hookups prohibited based on energy efficiency. To follow up briefly on the allocation provision that you were asking about, Judge Baker, I'd like to point out also that allocation there doesn't mean any sort of general distribution. It's more of a rationing authority, both under what used to be the Emergency Petroleum Allocation Act. If you look at the 1975 EPCA statute, the provision 6399 actually says this act, and the act also amended the Emergency Petroleum Allocation Act. And there is still some similar emergency rationing authority under an international agreement. That's at 6271A that provides the president authority to enforce or authority to implement a treaty that is kind of doing a similar thing, but in an energy emergency allocating petroleum products among countries. And the reason that there was concern that that would change who had jurisdiction over natural gas is because petroleum products are defined in 6202 to include liquid natural gas. All right. So you're representing restaurant owners or developers who would like to use natural gas in their kitchens. If Congress wanted to prevent a city from banning natural gas, couldn't they have just come out and said it? You're relying on a appliance statute, and I'm having some difficulty sort of connecting all that up. Yes, Your Honor. Congress probably could, under the Commerce Power, prevent a city from banning natural gas. It could probably have more jurisdiction over natural gas than it took under the Natural Gas Act, but that's not what it's doing here. The issue here is Berkeley banning appliances, not Berkeley banning natural gas as part of some broader distribution decision. It's about whether appliances can connect to the available energy supply. Counsel, my indication is that the ordinance does not even mention quantities of energy nor mention consumer products or appliances at all. There's nothing in the ordinance that deals with appliances, is there? That's correct, Your Honor. You're arguing by implication. Yes, the intended effect of the ordinance was to prevent natural gas from being used in appliances, and I don't think creative drafting can get around the preemption provision. Actually, I think at the time Berkeley adopted this ordinance, it thought that it couldn't ban these appliances, and that's why it took this roundabout path to doing so. It seems to have changed its view to say that it can ban them. I want to go back to the idea that what would be preempted is a regulation that prevented a hookup because the appliance isn't more efficient than the federal standard, and I think that also leads us to win here because if you swap out energy efficiency for energy use, the hookup here is prohibited not because of efficiency but because of the energy use of the appliance. So I think on the interpretation Berkeley advanced today, we win and the ordinance is preempted. Briefly addressing the standing point since that was raised earlier, at least one of our members is injured now because they want to open a restaurant now and are prohibited from doing so in new construction under this ordinance if they also want to use natural gas, which they do. So I think this is a current injury, and the cases about future risk of prosecution are not on point. Can I ask a follow-up to the question? If Berkeley wanted to ban gas use in the entire city, would you think that that's preempted by this statute? I doubt it, and I think that's where we have to look to what are the limits of concerning and what is this statute really concerned with? I think that's a broader distribution decision. I don't know that Berkeley would have the authority to do that under state law. I think that's an issue that would have to work out with California and that some of the issues that are also, I think, still in play. I notice you've preserved your state law claims, which presumably you could always bring up in a state court. Yes, Your Honor, and I think if you reverse the district court on the preemption issue, that I think the jurisdiction has to come back over those claims because the only basis for declining jurisdiction was because the district court got rid of the federal claim. So I think those claims would be revived in this case if the court reverses. And you're not bringing state court actions separately anywhere? I don't believe so, but I think we could do so if the federal claim were to fail. I guess to respond briefly to the point about how fuel type isn't one of the categories protected in the unavailability provisions in 6297-D4, I don't think that's accurate. I think if you look at 6295-Q1, Congress actually required the federal government, when it's setting standards, to set different standards based on the type of fuel that an appliance used, in part because it wanted to avoid the situation where an appliance was made unavailable because of its type of fuel. So to wrap up, I think I want to focus back on the simple question that I think resolves this case, which is can Berkeley ban covered appliances? I think the answer to that under EPCA is no, and if that's correct, as the government acknowledges, you can't ban hookups in order to ban the appliances either. I think it's about the effect of the ban and not its motivation. You can't do indirectly what you're prohibited from doing directly. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn. Thank you.
judges: O'SCANNLAIN, BUMATAY, Baker